THIS OPINION HAS NO PRECEDENTIAL 
 VALUE. IT SHOULD NOT BE CITED OR RELIED ON IN ANY PROCEEDING EXCEPT AS PROVIDED 
 BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Irene Oakley,       
Appellant,
 
 
 

v.

 
 
 
Estate of Arthur Oliver Sedano and John P.
Bacot, Jr., as Personal Representative for the Estate of Arthur Oliver Sedano,       
Respondents.
 
 
 

Appeal From Horry County
Steven H. John, Circuit Court Judge

Unpublished Opinion No. 2004-UP-194
Heard December 10, 2003  Filed March 
 22, 2004

AFFIRMED 

 
 
 
James L. Hills, of Myrtle Beach, for Appellant.
Ronald R. Norton, of Conway, for Respondents.
 
 
 

 PER CURIAM:  Irene Oakley filed 
 a creditors claim against the Estate of Arthur Oliver Sedano (the Estate) 
 to collect past due child support accruing during Sedanos lifetime.  The Estate 
 denied Oakleys claim.  Thereafter, Oakley sued the Estate to enforce the New 
 York child support order.  The Estate answered the complaint, asserting:  1) 
 Oakleys claim was barred by the statute of limitations; and 2) Oakleys claim 
 was barred by laches.  During trial, the Estate also asserted Oakley was required 
 to file her judgment pursuant to South Carolina Code Annotated section 20-7-1130, 
 et seq., (1985 & Supp. 2002), prior to enforcing the New York support 
 order in the South Carolina courts.  The probate court concluded none of the 
 Estates defenses applied.  The court ruled in favor of Oakley, awarding her 
 the child support arrearage and interest.  The Estate appealed to the circuit 
 court, and the circuit court reversed, ruling Oakleys claim was barred:  1) 
 by the statute of limitations; 2) by laches; and 3) because she failed to file 
 her judgment pursuant to section 20-7-1130, et seq.  Oakley appeals.  
 We affirm.
FACTUAL/PROCEDURAL BACKGROUND
Oakley and Sedano were divorced in New 
 York on June 7, 1945.  Pursuant to their divorce decree, Sedano was required 
 to pay fifteen dollars per week in child support.  Sedano never made any child 
 support payments.  
In 1998, Sedano died in Surfside Beach, South Carolina.  
 Thereafter, in 1999, Oakley filed a creditors claim for past due child support 
 against the Estate.  As stated earlier, the Estate denied the claim, and Oakley 
 sued the Estate in probate court, attempting to enforce the New York child support 
 order.   The Estate answered the complaint, arguing:  1) Oakleys claim was 
 barred by the statute of limitations; and 2) Oakleys claim was barred by laches.  
 Additionally, during the trial, the Estate asserted Oakley was required to file 
 her judgment pursuant to section 20-7-1130, et seq., prior to enforcing 
 it in the South Carolina courts.  The probate court ruled none of the Estates 
 defenses applied, found in favor of Oakley, and awarded her $73,800.85, plus 
 attorney fees and costs.  Subsequently, the Estate appealed to the circuit court, 
 and the circuit court reversed, ruling Oakleys claim is barred:  1) by the 
 statute of limitations; 2) by laches; and 3) because she failed to file her 
 judgment pursuant to section 20-7-1130, et seq.  Oakley appeals to this 
 Court, arguing the circuit court erred by ruling Oakleys claim is barred:  
 1) by the statute of limitations; 2) by the doctrine of laches; and 3) because 
 she failed to file her judgment pursuant to section 20-7-1130, et seq.  
 We conclude laches bars Oakleys claim, and thus, we need not address her remaining 
 issues.  
STANDARD OF REVIEW
The standard of review applicable to cases originating 
 in the probate court is controlled by whether the underlying cause of action 
 is at law or in equity.  In re Thames, 344 S.C. 564, 568, 544 S.E.2d 
 854, 856 (Ct. App. 2001).  An action to enforce a child support decree is an 
 action in equity.  See Bentrim v. Bentrim, 282 S.C. 333, 335, 
 318 S.E.2d 131, 132-33 (Ct. App. 1984); see also Johnson v. Johnson, 
 194 S.C. 115, 122, 8 S.E.2d 351, 354 (1940) (holding the nature of an alimony 
 award is not altered by attempting to enforce it in a foreign jurisdiction, 
 and thus, it remains an action in equity).  In an appeal in equity cases . 
 . . [an appellate] [c]ourt has jurisdiction to find the facts in accord with 
 its view of the preponderance of the evidence and may reverse findings of fact 
 by the trial court when the appellant satisfies . . . [the appellate] [c]ourt 
 that such findings are without evidentiary support or are against the clear 
 preponderance of the evidence. Vereen v. Bell, 256 S.C. 249, 252-53, 
 182 S.E.2d 296, 297 (1971).
LAW/ANALYSIS
Oakley argues the circuit court erred 
 by applying the doctrine of laches.  We disagree.        
Under the doctrine of laches, if a party, 
 knowing its rights, does not seasonably assert them, but by unreasonable delay 
 suffers its adversary to detrimentally change its position, then the courts 
 will ordinarily refuse to enforce these rights.  Provident Life & Acc. 
 Ins. Co. v. Driver, 317 S.C. 471, 478, 451 S.E.2d 924, 929 (Ct. App. 1994).  
 Delay alone in the assertion of a right does not constitute laches.  Id.  
 [L]aches arises upon the failure to assert a known right under circumstances 
 indicating that the lached party has abandoned or surrendered the right.  Id., 
 at 479, 451 S.E.2d at 929.  The lached party must have had actual knowledge 
 or inquiry notice of the facts forming the basis of its claim, and its failure 
 to assert its right is irrelevant until there is a reason or situation that 
 demands assertion.  Id.  
The evidence in the record indicates that following 
 the divorce in 1945, Oakley was awarded fifteen dollars a month in child support.  
 Sedano did not pay any of the child support payments.  The record also indicates 
 Oakley attempted to find Sedano following the child support award.  However, 
 Oakleys attempts to find Sedano were solely manifested by asking other family 
 members where he was.  By her own admission, she never used any other method 
 to attempt to locate Sedano.  Furthermore, according to Oakleys own testimony, 
 Oakley ceased looking for Sedano in 1951 or 1952 when she remarried.  
Viewing this evidence, we conclude Oakleys delay 
 in asserting her rights was unreasonable, as she did not attempt to enforce 
 the decree until fifty-five years after its issue, and, by her own admission, 
 she ceased her attempts to find Sedano after either 1951 or 1952. [1]   Thus, our only remaining inquiry 
 is whether the Estate has been prejudiced by Oakleys unreasonable delay.
The child support decree required Sedano to pay 
 Oakley fifteen dollars per week.  Oakleys complaint alleged Sedanos arrearage 
 totaled $12,060.00 in principal.  Furthermore, with interest, Oakleys complaint 
 alleged Sedanos arrearage totaled $406,000.00.  The probate court awarded Oakley 
 $73,800.85 in arrearages against the Estate, due in a lump sum.
Based on this evidence, we conclude the Estate 
 has been prejudiced by Oakleys delay in initiating this action, as interest 
 has been accruing on the arrearage for approximately fifty-five years.
Having concluded Oakley failed to seasonably initiate 
 this action and the Estate was prejudiced by her inaction, we hold the circuit 
 court properly applied the doctrine of laches to this case.     
CONCLUSION
Based on the above, the decision of the 
 circuit court is 
 AFFIRMED.
 HEARN, C.J., HOWARD, and KITTREDGE, 
 JJ., concurring.

 
 
 [1] Oakley argues her delay was reasonable because she was a waitress 
 in New York City, lacking the ability to hire a private investigator or the 
 knowledge to find Sedano herself.  However, Oakley did not present any evidence 
 outside her own testimony indicating her financial position during the fifty-five 
 years prior to filing this action.  Furthermore, her testimony indicates her 
 financial position improved following her remarriage in 1951, the same time 
 she ceased her efforts to find Sedano.