THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Department of Social Services, Respondent,
 
 
 

v.

 
 
 
 Rhonda M., Christopher George M., Chris H., Thomas Bill S., John Doe, Richard Roe, and the minor children under the age of eighteen (18) years:  C.M.  (born 10/31/2000), S.J.M. (born 07/19/2002),  K.M.(born 08/09/1997), Defendants; of whom Christopher George M. is
 Appellant.
 
 
 

Appeal from Spartanburg County
 James F. Fraley, Jr., Family Court Judge

Unpublished Opinion No. 2007-UP-013
Submitted January 1, 2007  Filed January 11, 2007

AFFIRMED

 
 
 
 Stephen M. Bingman, of Spartanburg, for Appellant.
 Deborah  Murdock, of Greenville, for Respondent.
 
 
 

PER CURIAM: Christopher George M. (Father) appeals the family courts termination of his parental rights to C.M., S.J.M., and K.M. (collectively the Children). We affirm.[1]
FACTUAL/PROCEDURAL BACKGROUND
On December 9, 2003, the Childrens mother, Rhonda M. (Mother), was arrested.  Two days later, on December 11, 2003, the Children were taken into custody by the Department of Social Services (the Department).  Father was incarcerated at this time.  
Mother and Father were married on December 5, 1997.  As a result, Father is the presumptive legal father of S.J.M. and C.M.[2]  However, Mother named him as the potential biological father of only one of the children, S.J.M.  She claimed Chris H.[3] and Thomas Bill S. fathered K.M. and C.M., respectively.  A paternity test indicated Thomas Bill S. is C.M.s biological father.  
On February 2, 2004, the family court held a removal hearing.  Because of Fathers incarceration, a guardian ad litem represented Father at this hearing.  Father did not contest the Departments removal of the Children.  The family court entered an order with the consent of all parties for removal of the Children.  The family court further noted Father agreed to a submitted treatment plan which required Father to contact [the Department] upon his release from prison.  If he wants custody of his minor child or children, he must first request and complete a DSS treatment plan.  
Father was released from prison around June 25, 2004.  After his release, Fonda Chandler, the Childrens foster care caseworker, set up an appointment to discuss a treatment plan for Father, but Father did not show up for the meeting.  On July 30, Father underwent a hair test for drugs and tested positive for cocaine and benzos.  A related urine test was found altered.  Pursuant to court order, he was required to take another urine and hair test in November.  The urine test came back negative, however, Father did not take the court-ordered hair test. 
In February 2005, police arrested Father for two counts of larceny of a firearm, breaking and entering, two counts of possession of a firearm by a felon, two counts of probation violation, two counts of obtaining property by false pretenses, and larceny after breaking and entering.  Father was incarcerated again as of February 23, 2005.  
On March 23, 2006, the family court held a hearing for the termination of parental rights (TPR) of Father, Thomas Bill S., Chris H., John Doe, Richard Roe, and Mother.  Mother voluntarily relinquished her parental rights in the Children.  Thomas Bill S. appeared at the hearing, but did not oppose the relief requested by the Department.  Father, who was still incarcerated, challenged TPR through a guardian ad litem.    
At the TPR hearing, Chandler testified Father did not take steps to reunify himself with the Children during the eight month period in which he was not incarcerated.  She further explained Father made no attempt to financially support the Children, did not visit them on a consistent basis, and was not able to maintain a stable environment for the Children.  
The family court terminated Fathers parental rights to the Children, holding (1) Father failed to remedy the conditions which caused the Childrens removal from his home within six months of the adoption of a placement plan; (2) the Children lived outside Fathers home for more than six months and, during this time, Father willfully failed to visit the Children; (3) the Children lived outside of Fathers home for more than six months and, during this time, Father willfully failed to support the Children; (4) Father is not the biological father of C.M. and C.M.s welfare would best be served by TPR; (5) Father has a diagnosable condition of drug addiction unlikely to change within a reasonable time; (6) the Children had been in foster care for fifteen of the twenty-two months before the hearing; and (7) TPR is in the Childrens best interest.  See S.C. Code Ann. §20-7-1572 (2)-(6), (8) (Supp. 2005) (providing the bases for TPR).  This appeal followed.
STANDARD OF REVIEW
In a TPR action, the best interests of the children are the paramount consideration.  Doe v. Baby Boy Roe, 353 S.C. 576, 579, 578 S.E.2d 733, 735 (Ct. App. 2003).  Before parental rights can be forever terminated, the grounds for the termination must be proven by clear and convincing evidence.  S.C. Dept of Soc. Servs. v. Headden, 354 S.C. 602, 608, 582 S.E.2d 419, 423 (2003).  In an appeal from a TPR, an appellate court may review the record and make its own determination whether the grounds for termination are supported by clear and convincing evidence.  Id. at 609, 582 S.E.2d at 423.  Despite this broad scope of review, the appellate court is not required to disregard the findings of the family court, as the family court is in a better position to evaluate the credibility of the witnesses and assign weight to their testimony.  Id.  This degree of deference is especially true in cases involving the welfare and best interests of minor children.  Ex parte Morris, 367 S.C. 56, 62, 624 S.E.2d 649, 652 (2006).
LAW/ANALYSIS
I. Termination of Parental Rights
Father first contends the family court erred in terminating his parental rights because the court erroneously determined (1) the Children were removed from his home, (2) that he did not visit the Children, (3) that he did not support the Children, (4) that he has a diagnosable condition unlikely to change in a reasonable time, and (5) that his rights should be terminated as to C.M. based on the finding he is not the childs biological father.  We decline to address these issues because Father does not dispute the termination of his parental rights on the alternate basis that the minor children had been in foster care for fifteen of the most recent twenty-two months at the time of the hearing.  See S.C. Code Ann. § 20-7-1572(8) (Supp. 2005) (permitting TPR where a child has been in foster care under the responsibility of the State for fifteen of the most recent twenty-two months).  Because Father does not refute this finding, the courts determination that Fathers parental rights should be terminated under section 20-7-1572(8) is the law of the case.  See Charleston Lumber Co. v. Miller Housing Corp., 338 S.C. 171, 175, 525 S.E.2d 869, 871 (2000) (holding an unappealed ruling is the law of the case);  S.C. Dept of Soc. Servs. v. Seegars, 367 S.C. 623, 628, n. 3, 627 S.E.2d 718, 721, n.3 (2006) (ruling unappealed grounds for TPR are law of the case). Further, our courts have held that a finding pursuant to section 20-7-1572(8) alone is sufficient to support a termination of parental rights.  S.C. Dept of Soc. Servs. v. Sims, 359 S.C. 601, 608, 598 S.E.2d 303, 307 (Ct. App. 2004).  See also Charleston County Dept of Soc. Servs. v. King, 369 S.C. 96, ____, 631 S.E.2d 239, 241 (2006) (holding, where parent failed to appeal ruling that child had been in foster care for fifteen of most recent twenty-two months, one statutory ground for TPR had been met and the appellate court need only consider whether termination of parental rights was in the best interest of the child).
II.  Best Interests of the Children
Father next maintains the family court erred in failing to make specific findings of fact supporting its decision that TPR was in the best interest of the Children.  We disagree.
Rule 26(a), SCRFC provides that [a]n order or judgment pursuant to an adjudication in a domestic relations case shall set forth the specific findings of fact and conclusions of law to support the courts decision.  However, an appellate court may make an independent review of the record to make findings of fact when the family courts order fails to make such findings in compliance with Rule 26(a).  Bull v. Smith, 299 S.C. 123, 126, 382 S.E.2d 905, 906-07 (1989).
We first note the family court orally included specific grounds supporting its finding TPR is in the best interest of the Children.  The family court stated:

 As to [Mother], I find that she voluntarily relinquished her rights and, based on the childrens excitement about the possibility of adoption, and the plan to put them back together, with the prospective adoptive parents possibly being available, I find its in their best interests and I will terminate [Mothers] parental rights.

With respect to Father, the family court found TPR is in the best interests for the same reason as [for Mother] . . . .  
Additionally, we find clear and convincing evidence compels a finding TPR is in the Childrens best interest.  First, Mothers counsel indicated Mother believed TPR and adoption would be in the Childrens best interest, resulting in Mothers relinquishment of her own parental rights.  Second, the Childrens caseworker, Chandler, testified she believed TPR and adoption would be in the Childrens best interest.  Third, Chandler testified the Children were well-adjusted in their foster home, adoption recruitments had been successful, the Department found a pre-adoptive home for the Children, and the Children would be placed together during pre-adoption.  The Department was working for the Children to be adopted together, and the Children were excited about this possibility because of the continuing bond they shared.   
Additionally, Chandler testified Father did not work toward reunification with the Children, make financial or material contributions to support them, visit on a consistent basis, or show himself capable of providing a stable environment for the Children.  Finally, the Childrens guardian ad litem confirmed the Children were well adjusted at that time, they were excited at the prospect of being adopted together, and agreed TPR would be in their best interest.  Based on this evidence, we hold clear and convincing evidence compels a conclusion TPR and adoption is in the Childrens best interest.
For the foregoing reasons, the family courts decision is
AFFIRMED.
ANDERSON, HUFF and BEATTY, JJ., concur.

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.
[2] See Chandler v. Merrell, 291 S.C. 224, 226, 353 S.E.2d 133, 134 (1987) (Every child born in wedlock is presumed to be legitimate.).  Although the current marital status of Mother and Father is unknown, Mother had filed for divorce at the time of the TPR hearing.  
[3] The record shows the Department had legal documentation showing that in June 2001, a Chris H.H. changed his name to Christopher George M. The Department has no proof whether Chris H. does or does not exist, but Chris H.H. shows the same date of birth as Father.